UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

LOIS MIRIAM, LLC,

           Debtor.

NO. 26-10402

**DECLARATION OF BRIAN SMITH IN SUPPORT OF FIRST DAY MOTIONS**

I, Brian Smith, declare and state as follow:

1. I am the Founder and President of Lois Miriam, LLC (the "**Debtor**"). I am over the age of eighteen (18) and competent to testify as to the matters stated herein.

2. I give this Declaration based on my own personal knowledge, or my review of records, in support of the following motions (collectively, the "**First Day Motions**"):

    a. *Emergency Motion for Order Authorizing Interim Use of Cash Collateral* (the "**Cash Collateral Motion**").

    b. *Emergency Motion for Order Authorizing Debtor to Maintain Prepetition Bank Accounts and Cash Management System* (the "**Cash Management Motion**").

    c. *Emergency Motion for Order Authorizing Payment of Payroll Taxes* (the

DECLARATION OF BRIAN SMITH IN SUPPORT OF
FIRST DAY MOTIONS - 1

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587-0700 fax 206 587-2308

Case 26-10402-TWD    Doc 12    Filed 02/11/26    Ent. 02/11/26 15:48:19    Pg. 1 of 7

"**Payroll Taxes Motion**").

## Factual Background

3. Since 2021, the Debtor has operated a restaurant-style cocktail bar under the name Bar Miriam and wine-retail business under the name Queen Anne Bottle Shop (the "**Business**"). Bar Miriam and Queen Anne Bottle Shop share a location at 307 W McGraw Street, Seattle, Washington 98119. I continued to operate the Business through the COVID-19 pandemic, which placed significant strain on the Debtor's financial health.

4. In the years leading up to filing the Petition, the Debtor experienced a combination of operational and financial challenges that materially impaired its liquidity and ability to meet ongoing obligations as they came due. These challenges included lasting effects from COVID-19 shutdowns, rising labor, food, and occupancy costs, persistent inflationary pressures, and disruptions to consumer demand that negatively impacted revenues. Despite efforts to control expenses, renegotiate obligations, and explore alternative financing and strategic options, cash flow constraints worsened, leaving the Debtor unable to service debt and maintain adequate working capital. Prior to filing for bankruptcy, the Debtor sought financing in the form of merchant cash advances ("**MCAs**") to maintain the working capital necessary for its business operations. However, declining consumer demand and the high effective interest rates associated with the MCAs significantly reduced net revenue, ultimately leaving the Debtor with no alternative but to seek bankruptcy protection.

5. As a result, the Debtor was forced to seek relief under Chapter 11, Subchapter V of the Bankruptcy Code in order to preserve value, stabilize operations, and pursue an orderly restructuring.

6. The Debtor filed a petition (the "**Petition**") under Chapter 11, Subchapter V on

DECLARATION OF BRIAN SMITH IN SUPPORT OF
FIRST DAY MOTIONS - 2

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587-0700 fax 206 587-2308

4914-4941-4285, v. 1

Case 26-10402-TWD    Doc 12    Filed 02/11/26    Ent. 02/11/26 15:48:19    Pg. 2 of 7

February 9, 2026 (the "**Petition Date**") to prevent its assets from being liquidated, and to preserve and maintain the value of Debtor as an operating entity for the benefit of all creditors, and to continue operating the Business. The Debtor is now operating its business and managing its affairs as a debtor-in-possession under 11 U.S.C. §§ 1107 and 1108.

## Use of Cash Collateral[1]

7. As of the Petition Date, Debtor's cash amounts were $44,124.09, with no accounts receivable or cash equivalents. Accordingly, on the Petition Date, and as a going concern, Debtor's cash collateral was estimated to be valued at $44,124.09.

8. ODK Capital, LLC dba OnDeck ("**OnDeck**") originated a loan to the Debtor in the amount of $180,000 on April 23, 2025 (the "**OnDeck Loan**"). OnDeck filed UCC-1 Financing Statement on April 24, 2025 (No. 2025-114-5300-3) (the "**OnDeck UCC**"). As of the Petition Date, the Debtor owes approximately $75,000 on the OnDeck Loan. Based on an initial analysis, OnDeck is the senior secured creditor on the assets of Debtor and the only secured creditor with realizable value in its collateral. Attached as Exhibit A is a true and correct copy of the OnDeck UCC.

9. Vox Funding LLC ("**Vox**") originated a *Future Receipts Sale Agreement* dated to the Debtor in the amount of $99,000 on September 9, 2025 (the "**Vox Loan**"). Vox filed UCC-1 Financing Statement on September 10, 2025 (No. 2025-253-3257-8) (the "**Vox UCC**"). As of the Petition Date, the Debtor owes approximately $75,000 on the Vox Loan. Based on an initial analysis, Vox is the junior secured creditor on the assets of Debtor and does not currently have realizable value in its collateral. Attached as Exhibit B is a true and correct copy of the Vox UCC.

---

[1] Any capitalized terms not defined in Paragraphs 7 through 12 shall have the meaning ascribed to them in the Cash Collateral Motion.

DECLARATION OF BRIAN SMITH IN SUPPORT OF
FIRST DAY MOTIONS - 3

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587-0700 fax 206 587-2308

4914-4941-4285, v. 1

10. There are other unsecured creditors of the Debtor. A true and correct copy of the results of the UCC search from Washington State are attached hereto as Exhibit C.

11. The Debtor requires the immediate use of the cash proceeds of the working capital and collection of customer sales, OnDeck has a security interest in (the "**Cash Collateral**"), to continue uninterrupted operations for the benefit of its creditors and its estate, in order to avoid immediate and irreparable harm to the Business. The Debtor seeks to use Cash Collateral in accordance with the thirteen (13) week budget, with expenses being paid from revenue of the Business and funds in Debtor's operating accounts. Attached as Exhibit D is a true and correct copy of the proposed Budget. To the extent Debtor requires additional funds to operate the Business, Debtor will seek to obtain post-petition financing after notice and hearing. Without use of Cash Collateral, Debtor will be unable to pay its ongoing operating expenses, including payroll and payroll taxes, and will thus be unable to continue necessary operations of the Business.

12. As further adequate protection the Debtor is also proposing to pay OnDeck $1,000.00 per month during the cash collateral period which approximately equates to the current payment.

### **Maintenance of Cash Management Systems and Bank Accounts[2]**

13. Prior to the Petition Date and in the ordinary course of its business, the Debtor maintained cash management systems similar to those used by other enterprises of its size. Specifically, the Debtor uses: (a) Toast, Inc. ("**Toast**"), a point-of-sale system and credit card processor and (b) Auris Payroll Solutions, Inc. dba Heartland Payroll ("**Auris**"), a payroll processing (collectively, the "**Cash Management System**"), collectively as its cash management

---

[2] Any capitalized terms not defined in Paragraphs 13 through 17 shall have the meaning ascribed to them in the Cash Management Motion.

DECLARATION OF BRIAN SMITH IN SUPPORT OF FIRST DAY MOTIONS - 4

4914-4941-4285, v. 1

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587-0700 fax 206 587-2308

Case 26-10402-TWD    Doc 12    Filed 02/11/26    Ent. 02/11/26 15:48:19    Pg. 4 of 7

Docusign Envelope ID: C54AD9F0-F338-4E11-98BB-4D55F20FAF50

system.

14.     Additionally, the Debtor currently maintains the following accounts with Chase Bank, which the Debtor proposes to maintain and use as debtor-in-possession:

| Institution | Account No. | Account Type | Proposed Use | Cash Balance |
|---|---|---|---|---|
| Chase Bank | XXXXX-0527 | Checking | Checking Account | $0.00 |
| Chase Bank | XXXXX-7627 | Savings | Savings Overdraft Protection | $0.00 |
| | | | **TOTAL** | $0.00 |

15.     I believe that the Banking Institution is insured by a department, agency, or instrumentality of the United States, or is otherwise backed by the full faith and credit of the United States. I further believe, based on historical working capital reserves, that the balance in each such account is unlikely to exceed $250,000 at any given time.

16.     Transitioning to a new cash management system or to new business forms or bank accounts would cause unnecessary disruption and hamper my ability to continue operating in the ordinary course of business. Accordingly, I respectfully request that the Court enter an order authorizing me to maintain the Debtor's existing bank accounts and forms, and to continue using its existing cash management system.

17.     In order to maintain a distinction between checks that were issued before the Petition Date and those issued after, the Debtor will skip at least 100 sequential check numbers

DECLARATION OF BRIAN SMITH IN SUPPORT OF
FIRST DAY MOTIONS - 5

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587-0700 fax 206 587-2308

4914-4941-4285, v. 1

Docusign Envelope ID: C54AD9F0-F338-4E11-98BB-4D55F20FAF50

and will start a new sequence with the next appropriate check number that is a multiple of 100.

### Payment of Payroll Taxes[3]

18.     The Debtor disburses payroll to salary employees bi-weekly, with the next payroll set to occur on February 13, 2026. On January 28, 2026, the Debtor processed its January 30, 2026, payroll (the "**Previous Payroll**"), which included hours worked prepetition from January 11, 2026, through January 24, 2026, in the amount of $3,275.26, which includes wages, taxes, and other benefits. The Debtor's next post-petition payroll for salary employees is scheduled for February 13, 2026, but will process on February 11, 2026, and will include prepetition hours worked on January 25, 2026, through February 9, 2026, in the approximate amount of $4,128.00 (the "**Salary Wages**").

19.     The Debtor disburses payroll to hourly employees bi-weekly, with the next payroll set to occur on February 13, 2026. On January 28, 2026, the Debtor processed its January 30, 2026, payroll, which included hours worked prepetition from January 11, through January 24, 2026, in the amount of $17,232.63, which includes wages, taxes, and other benefits. The Debtor's next post-petition payroll for salary employees is scheduled for February 13, 2026, but will process on February 11, 2026, and will include prepetition hours worked on January 25, 2026, through February 9, 2026, in the approximate amount of $22,957.00 (the "**Hourly Wages**" and collectively with the Salary Wages, the "**Prepetition Wages**").

20.     On February 2, 2026, I received notice (the "**Payroll Notice**") that Auris Payroll Solutions, Inc. dba Heartland Payroll ("**Auris**") processed the Prior payroll but was unable to collect payment from the Debtor's bank account due to insufficient funds. The Payroll Notice

---

[3] Any capitalized terms not defined in Paragraphs 18 through 22 shall have the meaning ascribed to them in the Payroll Taxes Motion.

DECLARATION OF BRIAN SMITH IN SUPPORT OF
FIRST DAY MOTIONS - 6

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587-0700 fax 206 587-2308

4914-4941-4285, v. 1

stated that the Debtor owed Auris $7,690.66 (the "**Payroll Shortfall**") and that the Debtor's account had been suspended until the outstanding balance was paid. Accordingly, the Debtor seeks authority to pay Auris' prepetition claim in the amount of $7,690.66 in order to continue utilizing the payroll services. The debt arising from the Payroll Shortfall relates exclusively to wages owed to employees of the Debtor.

21.     Attached as <u>Exhibit E</u> is a true and correct copy of the list of employees to be paid, along with estimated payroll totals. None of the proposed payments to an employee exceed $17,150. The prepetition wage claims are based on compensation earned within 180 days of the petition date. I do not believe payment at this time would prejudice other creditors. Payment of the prepetition wages is and will be necessary to preserve the Debtor's business as a going concern.

22.     The Debtor is seeking authority from the Court to pay all federal and state withholding and payroll-related taxes arising from the Prepetition Wages and the Payroll Shortfall (the "**Payroll Taxes**"), as well as all other withholdings such as life insurance and other employee deductions, if any. The Payroll Taxes are due on February 13, 2026, and are set to be paid automatically from Auris as long as the Debtor pays the Payroll Shortfall first. The Debtor estimates the total amount of the upcoming Payroll Taxes will be $11,000.


I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED this 11th day of February, 2026 at Seattle, Washington.



Signed by:

Brian Smith

Brian Smith

DECLARATION OF BRIAN SMITH IN SUPPORT OF
FIRST DAY MOTIONS - 7

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587-0700 fax 206 587-2308

4914-4941-4285, v. 1